UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VALVANO REALTY COMPANY, | : | |
| Plaintiff, | : | No. 3:17-cv-00266 |
| v. | : | (Saporito, M.J.) |
| AMERICAN FIRE AND CASUALTY COMPANY, | : | |
| Defendant. | : | |

FILED
WILKES BARRE
AUG 26 2019
PER ___MS___
DEPUTY CLERK

**MEMORANDUM**

This matter is before the court on the plaintiff's motion to appoint an appraiser. (Doc. 20). The motion has been briefed and is ripe for a decision. For the reasons set forth below, we will grant the motion.

*I.   Statement of Facts*

The plaintiff commenced this action in the Court of Common Pleas of Lackawanna County, Pennsylvania on November 16, 2016. In the complaint, the plaintiff asserts a claim for breach of contract and statutory bad faith under 42 Pa. Const. Stat. Ann. § 8371 for a fire loss that occurred on December 18, 2015, at its property located at 347 Main Street, Dickson City, Pennsylvania.

Thereafter, the defendants removed this case to this court on February 13, 2017. (Doc. 1). By stipulation, the parties agreed that Liberty Mutual Insurance be dismissed as a defendant with prejudice. (Doc. 9; Doc. 10).

In the complaint, the plaintiff alleges that, at the time of the fire, the plaintiff was covered by a commercial property insurance policy issued by the defendant, American Fire and Casualty Co. ("American"), Policy No. BKA (16) 56074057. The policy provided for coverage limits of $850,113 for replacement costs and $18,360 for rental value. The plaintiff alleges that it sustained damages in the amount of $1,420,580.33. Despite the plaintiff's demand for payment of the limits of the policy, American has paid the plaintiff the sum of $110,770.35.

The insurance policy contains an appraisal provision which provides, in part, that:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of the court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their

> differences to the umpire. A decision agreed to by
> any two will be binding.

(Doc. 26-5, at 27).

The plaintiff alleges that it gave notice to American of its intention to invoke this provision. American maintains that a failure to pay the amount demanded by the plaintiff does not trigger the appraisal provision in the policy. American further argues that despite its requests for information regarding the specifics of the alleged loss, the plaintiff has failed to provide meaningful documentation to American to allow it to determine whether a disagreement actually exists. In response, the plaintiff maintains that it has exchanged information with defense counsel.

On March 8, 2018, following several telephone conferences with counsel, the court stayed the action at counsel's request. We lifted the stay on April 2, 2019. (Doc. 45). We conducted a telephone conference with counsel on August 14, 2019, for the purpose of resolving a discovery dispute wherein we ordered that the plaintiff shall produce invoices and estimates for repairs to the premises on or before September 4, 2019.

The plaintiff's motion to appoint appraiser requests that we appoint the appraiser on behalf of American so that the appraisers may

3

thereafter appoint the umpire and allow the appraisal process to commence.

## II. Legal Standards

It is well-established law in Pennsylvania that "in order for a case to be appropriate for appraisal, there are generally two conditions that must be met: (1) the defendant has admitted liability for the loss; and (2) there must be a dispute only as to the dollar amount of the loss." *Ice City, Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236, 240 (Pa. 1974); *see also Banks v. Allstate*, No. 91–6982, 1992 WL 102885, at *2 (E.D. Pa. May 7, 1992). Under Pennsylvania law, insurance policy interpretation is a matter of law for the court. *See Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). The "goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy." *Id.* (citing *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) ("The polestar of [the court's] inquiry . . . is the language of the insurance policy."). "When the language of an insurance policy is plain and unambiguous, [the] court is bound by that language." *St. John*, 106 A.3d at 14. "Alternatively, if an

4

insurance policy contains an ambiguous term, 'the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.'" *Id.* (quoting *401 Fourth St.*, 879 A.2d at 171). "Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning." *Id.* (citing *Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978 (Pa. 2001)). "Finally, the language of the policy must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Id.* (citing *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997)); *Madison Constr.*, 735 A.2d at 108 (observing that the court "may inform [its] understanding of [insurance policy] terms by considering their dictionary definitions").

## III. Discussion

It is also well-established that Pennsylvania law encourages the settlement of disputes between an insured and an insurer about the amount of loss by appraisal. *Ice City*, 314 A.2d at 240. The Court in *Ice City* stated that "[a]ppraisal is an entirely appropriate means for settling the dispute and is indeed the favored practice." *Id.* A condition precedent to appraisal is that there be an admission of liability and a dispute only

as to the dollar value of the loss. *Id.* A dispute of coverage, improper for appraisal, occurs when an insurance company claims an exclusion of a loss under the terms of the insurance policy. *See Banks v. Allstate*, No. 91–6982, 1992 WL 102885, at *1 (E.D. Pa. May 7, 1992) (applying Pennsylvania law, and refusing to order appraisal where company claimed some damage was not covered by the policy). However, when the parties merely disagree over the extent of damage or whether a covered peril is the cause of certain damage, that is a dispute regarding the amount of loss and is proper for appraisal. *Williamson v. Chubb Indem. Ins. Co.*, No. 11–6476, 2012 WL 760838, at *3–*4 (E.D. Pa. Mar. 8, 2012).

Here, American has admitted that the plaintiff suffered a fire loss and that it underwrote and issued the policy covering the loss. (Doc. 2 ¶¶ 5,7). American does not allege a coverage dispute. Rather, it asserts that the plaintiff has not provided it with enough documentation to decide the extent of the damages. Despite this contention, American assigned the adjustment of the claim to large loss adjuster Paul Barnett, who retained a construction consultant to assist in the evaluation of the damages, and a structural engineer to determine the extent of structural damage to the building. (Doc. 26, at 5-6). The structural engineer determined that the

fire destroyed the entire two-story interior structure, and he made repair recommendations. (*Id.*). American's construction consultant issued a report estimating the total replacement cost of the building at $1,420,580.33 and its actual cash value at $480,609.74. (*Id.* at 8). Thereafter, a series of correspondence was sent by the plaintiff's counsel, Barnett, and counsel for American. Those letters did not involve disputes of coverage, but rather differences in evaluations of the loss.

American's adjuster valued the loss at $140,920.61 (replacement cost value) and at $110,608.34 (actual cost value). American's contention that it needs additional documentation to decide the extent of the loss is just another way of saying that there is a fundamental dispute as to the amount of loss. The court in *Williamson*, stated that:

> Estimating the dollar value of a loss presupposes a judgment of what repairs are necessary to recoup from the loss. Appraisers could not perform their duties if they were prohibited from opining on these matters. And in practice, where there have been two different assessments of the amount of loss—one by Plaintiffs' assessor, one by Defendant's—it is not surprising that the assessors may have some disagreement as to whether the covered occurrence actually caused a certain portion of the putative damage, as well as disagreements about the scope and method of necessary repairs. But to say such disputes are sufficient to negate the appraisal provision in the

policy would effectively eliminate appraisal as a
workable method of alternative dispute resolution.

*Williamson*, 2012 WL 760838, at *4. It is apparent that the parties disagree on the extent of the damages from the fire. The appraisal provision contained in the policy is an appropriate method for resolving this dispute. Appraisal provisions are required by statute to be included in all fire insurance policies issued in Pennsylvania. 40 P.S. § 636. As the court in *Ice City* recognized "allowing an insurer unilaterally to reject the statutorily-mandated procedures . . . would effectively render void the mandatory appraisal procedures." *Ice City*, 314 A.2d at 241. Accordingly, we will grant the plaintiff's motion to appoint appraiser.

An appropriate order follows.

*[signature]*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: August 26, 2019